IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **STEPHEN L. DESHAZO, etc.,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    **CIVIL ACTION 06-0174-WS-C** |
| | ) |
| **BALDWIN COUNTY, ALABAMA, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

**ORDER**

This matter is before the Court on the defendants' motions to dismiss. (Docs. 16, 17). The parties have filed briefs in support of their respective positions, (Doc. 16, Exhibit 1; Docs. 18, 25, 29), and the motions are ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motions to dismiss are due to be granted.

**BACKGROUND**

Section 40-10-28 of the Alabama Code, entitled "Excess funds after sale," addresses what to do with "[t]he excess arising from the sale of any real estate." Section 40-10-122(a) requires a landowner seeking redemption to pay 12% interest on "the amount of money for which the lands were sold," including "the portion of any excess bid that is less than or equal to 15 percent of the market value" of the property.

According to the complaint, the plaintiff's property in Baldwin County was sold for taxes in May 2004. The property was sold for $25,000 in excess of the amount he owed in taxes ("excess funds"), which the defendants retained and placed at interest. When the plaintiff redeemed his property several weeks later, he was required to pay his back taxes, interest at 12% on those taxes, and interest at 12% on the excess funds. The defendants remitted the excess funds and 12% interest on them to the purchaser. They retained for themselves the interest earned on the excess funds while in their possession, without crediting this amount to the plaintiff's tax bill.

According to the complaint, the plaintiff was not notified that the defendants might

accept any excess funds, that they had done so, that they would retain the funds until and unless the plaintiff sought to recover them, that they would retain any interest earned on the excess funds, or that the plaintiff would be required to pay 12% interest on the excess funds in order to redeem his property.

According to the complaint, the plaintiff's experience is a common one, and he seeks to represent a class of all past and present owners of land in Baldwin County whose property was sold within the past 13 years to pay delinquent taxes and which sale produced excess funds.

The plaintiff brings suit pursuant to 42 U.S.C. § 1983 and the Declaratory Judgments Act. He identifies a number of federal constitutional challenges, including at least those of vagueness, due process and equal protection. The plaintiff seeks a declaration that Section 40-10-28 is unconstitutional, an injunction against accepting excess funds or requiring landowners to pay interest thereon as a condition of redemption, and damages equal to the excess funds held by the defendants, with statutory interest thereon.

## DISCUSSION

The defendants raise a number of challenges to the complaint, but the Court need consider only the threshold issues of its subject matter jurisdiction and prudential restraints on the exercise of jurisdiction.

**I. Tax Injunction Act.**

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Tax Injunction Act ("TIA"), when it applies, deprives a federal court of subject matter jurisdiction. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982).

**A. "Restrain the ... Collection of Any Tax Under State Law."**

The threshold issue under the TIA is whether the complaint attempts to restrain the

assessment, levy or collection of a tax as comprehended within the statute.[1]  The plaintiff, (Doc. 35 at 6-7), focusing on the "tax" portion of this requirement, urges the Court to apply the test adopted by the Fourth Circuit, under which "the general inquiry is to assess whether the charge is for revenue raising purposes, making it a 'tax,' or for regulatory or punitive purposes, making it a 'fee.'"  *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000).  "To aid this analysis, courts have developed a three-part test that looks to different factors: (1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge."  *Id*.[2]

"The 'classic tax' is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large."  *Valero Terrestrial v. Caffrey*, 205 F.3d at 134.  At the opposite end of the spectrum, "[t]he 'classic fee' is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise money placed in a special fund to defray the agency's regulation-related expenses."  *Id*. (internal quotes omitted).  "[M]ost charges will not fall neatly into either extremity and the characteristics of the charge will tend to place it somewhere in the middle."  *Id*.  In such cases, "if the ultimate use of the revenue benefits the general public then the charge will qualify as a 'tax,' while if the benefits are more narrowly circumscribed then the charge will more likely qualify as a 'fee.'"  *Id*.

The plaintiff's skeletal argument addresses excess funds but not the interest charged redeeming landowners thereon.  (Doc. 25 at 7-8).  With respect to the first *Valero Terrestrial* factor, the plaintiff does not argue that the Alabama Legislature has not authorized the acceptance of excess funds or the charging of interest thereon in order to redeem and, as the

---

[1]"State taxation, for § 1341 purposes, includes local taxation."  *Hibbs v. Winn*, 542 U.S. 88, 100 n.1 (2004).

[2]Although the Eleventh Circuit has not adopted this factor analysis, it has indicated that, as in *Valero Terrestrial*, "[t]he question [is] whether the purpose of the [challenged law] is to raise revenue for the city or to regulate licensees."  *Miami Herald Publishing Co. v. City of Hallandale*, 734 F.2d 666, 670 (11th Cir. 1984).  The Court will, for present purposes, thus indulge the plaintiff's implicit assumption that the Eleventh Circuit would embrace the factors identified by the Fourth Circuit for resolving that question.

statutes quoted in the Background section reflect, it clearly has done so.

The plaintiff's attack is instead that "the *amount* of excess funds is not set by the Legislature" but by the successful bidder. (Doc. 25 at 7 (emphasis added)). This characteristic, the plaintiff suggests, deprives the excess funds "of the certainty and definiteness" of a tax. (*Id*.). The plaintiff, however, offers no authority for the proposition that a tax for purposes of the TIA must manifest some threshold level of numerical certitude. Nor does the statute appear more indefinite than common taxing provisions. The statute establishes a rate of exaction (12%) to be charged against a figure that is identified by type (excess funds) but not by amount, for the obvious reason that the amount depends on individualized circumstances. In like fashion, an income tax statute provides a rate of exaction to be applied against a figure that is identified by type (taxable income) but not by amount, yet it could scarcely be argued that the legislature's ignorance of a taxpayer's taxable income renders such a scheme objectionably indefinite.

With respect to the second *Valero Terrrestrial* factor, the plaintiff posits that the excess funds provisions do not affect a "large segment of the population." (Doc. 25 at 8). All property owners, however, are subject to these provisions if they fail to pay their taxes and their property is disposed of at a tax sale. Thus, a penalty on landowners delinquent in payment of their ad valorem taxes satisfied this factor because "the penalty ... is applicable to all residents of Orleans Parish who own property." *Washington v. Heard, Linebarger*, 2002 WL 1000972 at *2 (E.D. La. 2002), *aff'd,* 338 F.3d 442 (5th Cir. 2003).

With respect to the final (and determinative) *Valero Terrestrial* factor, the plaintiff argues that excess funds do not benefit the general public because they are segregated for years pending re-payment to the owner or purchaser. (Doc. 25 at 8). This factor, however, measures not intermediate but "ultimate" use of the funds, *Valero Terrestrial v. Caffrey*, 205 F.3d at 134, and the ultimate disposition of excess funds when they remain with the government is into the "general fund of the county." Ala. Code § 40-10-28. The plaintiff does not suggest that such funds do not thereafter benefit the general public.

Even had the plaintiff articulated some basis for concluding that excess funds and the

interest thereon required for redemption do not constitute a tax,[3] that would not alone support federal jurisdiction.  The TIA applies not only when the plaintiff challenges a tax but also when the plaintiff's challenge to something other than a tax "restrain[s] the ... collection of any tax." 28 U.S.C. § 1341.  Thus, for example, a suit to dissolve a state tax lien is barred by the TIA because it interferes with the state's efforts to collect taxes.  *Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir. 1982).  Likewise, a suit to challenge a penalty on delinquent property taxes imposed to cover collection costs is barred by the TIA because the penalty "is inexorably tied to the tax collection itself."  *Washington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP*, 338 F.3d 442, 444 (5th Cir. 2003).

In particular, a tax sale is a mode of collecting taxes, and efforts to challenge the tax sale procedure represent restraints on the collection of a tax prohibited by the TIA.  *E.g., Wright v. Pappas*, 256 F.3d 635, 637 (7th Cir. 2001)(an action to declare a tax sale illegal is "comfortably within the prohibition of the Tax Injunction Act"); *Bouchard v. Clinton County*, 2006 WL 1133221 at *2-5 (N.D.N.Y. 2006)(collecting cases); *Baechle v. Town of Mendon*, 2005 WL 3334708 at *3 (D. Vt. 2005).

The plaintiff's lawsuit directly challenges state tax sale procedures by demanding that the acceptance of excess funds be prohibited.  Such challenges necessarily restrain the collection of ad valorem taxes in violation of TIA.  The improper interference with state tax collection efforts that this lawsuit represents takes at least two forms: (1) it would remove an incentive for landowners to settle their tax debts before their land is sold;[4] and (2) it would undermine the

---

[3] Such bases appear readily available.  With respect to excess funds, they are not an exaction from the plaintiff of any kind, and as to the purchaser they are in the form of a voluntary exchange.  With respect to the interest on excess funds, the monies received from redeeming taxpayers are remitted to the purchaser and so are not available for use by the government.  It is unnecessary to decide whether the plaintiff's failure to raise these arguments waives them because, as discussed in text, the TIA and comity bar this suit regardless of whether excess funds and interest thereon are themselves taxes.

[4] "To protect government's exceedingly strong interest in financial stability in this context [recalcitrant taxpayers], we have long held that a State may employ various financial sanctions ... in order to encourage taxpayers to make timely payments prior to resolution of any dispute over the validity of the tax assessment."  *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 37 (1990).  Delayed payment is restrained collection, *Wright v. Pappas*,

efficacy of tax sales by discouraging potential purchasers from bidding at them.

The plaintiff ignores this aspect of the TIA, but he does suggest that the Supreme Court has limited the Act's reach to "cases in which state taxpayers seek federal court orders enabling them to avoid paying state taxes." *Hibbs v. Winn*, 542 U.S. 88, 107 (2004). The plaintiff undoes his own argument by relying on one of several opinions concluding that *Hibbs* does not limit the TIA to cases in which the plaintiff is seeking to avoid paying his own taxes but rather makes the standard whether "'[f]ederal court relief ... would have operated to reduce the flow of state tax revenue.'"[5] For the reasons just discussed, the flow of ad valorem tax revenue would be reduced should the plaintiff's lawsuit succeed.

### B.  Plain, Speedy and Efficient Remedy.

"The touchstone for whether a taxpayer has a 'plain, speedy and efficient' remedy is whether she is entitled to a 'full hearing and judicial determination at which she may raise any and all constitutional objections to the tax.'" *Amos v. Glynn County Board of Tax Assessors*, 347 F.3d 1249, 1255 (11th Cir. 2003)(quoting *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 514 (1981)). The plaintiff acknowledges that this is the prevailing test. (Doc. 25 at 9-10). While the burden is on the plaintiff to show the absence of such a remedy,[6] the placement of the burden does not affect the outcome of these motions, since it is plain that Alabama provides an adequate remedy.

As the defendants have pointed out, the Alabama Declaratory Judgment Act empowers state courts to offer "a declaration of rights, status or other legal relations" under a statute or ordinance. Ala. Code § 6-6-223. The Supreme Court and various courts of appeal have deemed

---

256 F.3d at 637, and an elimination of excess funds (by eliminating the basis for an interest charge) will predictably lead to an increase in delayed payments.

[5]*Smith v. Ayotte*, 356 F. Supp. 2d 9, 13-15 (D.N.H. 2005)(quoting *May Trucking Co. v. Department of Transportation*, 388 F.3d 1261, 1267 (9th Cir. 2004)); *see also Henderson v. Stalder*, 407 F.3d 351, 359 (5th Cir. 2005)(the quoted portion of *Hibbs* applies only when suit is brought by a third person rather than the taxpayer and a successful suit would affirmatively enrich government coffers).

[6]*Amos v. Glynn County*, 347 F.3d at 1256.

similar statutes to provide an adequate remedy for purposes of the TIA.[7]  Declaratory judgments have been frequently employed to raise federal constitutional challenges to aspects of Alabama tax law,[8] and the Eleventh Circuit has recognized the declaratory judgment procedure as providing an adequate remedy under the TIA.[9]

The plaintiff ignores Alabama's declaratory judgment procedure and the wealth of case law finding such provisions an adequate remedy.  Instead, he scrutinizes the *other* statutory procedures identified by the defendants and challenges *them* as inadequate.  (Doc. 25 at 10-12).  Whatever the merits of those arguments may be, they are irrelevant absent a similar challenge to the adequacy of a declaratory judgment action.

The plaintiff notes generally that a state remedy is inadequate if it is "uncertain."  (Doc. 25 at 10).  A state remedy is uncertain, however, only when it is not clear that it allows the plaintiff's constitutional challenges to be heard in a judicial forum.  *See, e.g., California v. Grace Brethren Church*, 457 U.S. 393, 414 n.31 (1982)(explaining *Hillsborough Township v.*

---

[7]*Tully v. Griffin*, 429 U.S. 68, 75 (1976)(the plaintiff had an adequate state remedy because "the New York courts have consistently held that ... an action for a declaratory judgment ... may be used when the claim is that the tax is unconstitutional"); *Washington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP*, 338 F.3d 442, 444-45 (5th Cir. 2003) (Louisiana law); *Lawyer v. Hilton Head Public Service District No. 1*, 220 F.3d 298, 305 n.7 (4th Cir. 2000)(South Carolina law); *Folio v. City of Clarksburg*, 134 F.3d 1211, 1216 (4th Cir. 1998)(West Virginia law); *Burris v. City of Little Rock*, 941 F.2d 717, 721 (8th Cir. 1991)(Arkansas law); *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2nd Cir. 1989)(New York law); *Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir. 1982)(old Fifth Circuit case)(Texas law).

[8]*E.g., Alabama Alcoholic Beverage Control Board*, 890 So. 2d 70, 77 (Ala. 2003)(excise-tax scheme violated the Commerce Clause); *Jefferson County v. Richards*, 805 So. 2d 690, 694, 705 (Ala. 2001)(occupational tax did not violate the Equal Protection Clause);  *Melof v. James*, 735 So. 2d 1172, 1181 (Ala. 1999)(retirement benefit exemption from income tax did not violate the Equal Protection Clause).

[9]*Jefferson County v. Acker*, 137 F.3d 1314, 1318 (11th Cir. 1998)(where the county argued that "the Alabama Declaratory Judgment Act ... and the judges' ability to assert their constitutional objections to the tax as affirmative defenses ... provide the necessary remedies," the Court "agree[d] with Jefferson County's argument" ), *rev'd on other grounds*, 527 U.S. 423 (1999); *accord Black v. Alabama*, 71 F. Supp. 2d 1200, 1204 (S.D. Ala. 1999); *Richards v. Jefferson County*, 789 F. Supp. 369, 372 (N.D. Ala. 1992); *Clean Harbors, Inc. v. Sizemore*, 1990 WL 169423 at *2-4 (N.D. Ala. 1990).

*Cromwell*, 326 U.S. 620 (1946)).  Given the judicial imprimatur on state declaratory judgment statutes as an adequate remedy generally and in Alabama specifically, and given the wealth of Alabama cases employing that procedure to vindicate federal constitutional rights threatened by state taxing laws, the plaintiff has not met his burden of showing uncertainty concerning his ability to present his constitutional challenges before an Alabama court.[10]

Finally, the plaintiff suggests that state law provides no adequate remedy because "Alabama does not have an equal protection clause in its Constitution."  (Doc. 25 at 10).  This is of course beside the point, which is that Alabama does provide a judicial forum for the resolution of the federal constitutional challenges the plaintiff raises in this lawsuit.

## II. Comity.

For over a century, "[a]n examination of the decisions of this court shows that a proper reluctance to interfere by prevention [i.e., by injunction] with the fiscal operations of the state government has caused it to refrain from doing so in all cases where the Federal rights of the persons could otherwise be preserved unimpaired."  *Boise Artesian Water Co. v. Boise City*, 213 U.S. 276, 282 (1909), *quoted in Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 109 (1981).  This "comity principle" survived the enactment of the TIA in 1937, as exemplified by the Court's decision in *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943), which extended the bar to suits for declaratory relief.  *See Fair Assessment* v. *McNary*, 454 U.S. at 110-11 (discussing *Great Lakes* while expanding the comity doctrine to suits for damages).

Nothing in this conception of comity limits its application to exactions that, standing alone, constitute a "tax" under some technical definition of the term.  "We have long recognized

---

[10]*Williams v. City of Dothan*, 745 F.2d 1406 (11th Cir. 1984), is not to the contrary.  The *Williams* Court found a declaratory judgment remedy unavailable only because the plaintiff sought to challenge a municipal improvement assessment, and state law required that all such challenges be brought pursuant to a particular statutory scheme, independent of the declaratory judgment format.  *Id*. at 1413.  While the *Williams* Court noted more generally that Alabama law disapproves of the declaratory judgment procedure when "a special statutory procedure has been provided as an exclusive method of review for a particular type case," *id*. (internal quotes omitted), the plaintiff has not identified any exclusive statutory procedure governing his case.

that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax *administration*." *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 586 (1995)(emphasis added). "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the *modes adopted to enforce* the taxes levied should be interfered with as little as possible." *Dows v. City of Chicago*, 78 U.S. 108, 110 (1870)(emphasis added). It is thus unsurprising that *Great Lakes*, like *Boise Artesian Water* before it, decried federal interference with states' "fiscal operations," not simply taxes. 319 U.S. at 298; *accord Matthews v. Rodgers*, 284 U.S. 521, 525 (1932). The *McNary* Court, in turn, described *Great Lakes* as resting "upon the necessity of federal-court respect for state taxing *schemes*," not state taxes per se. 454 U.S. at 111 (emphasis added).

The rule the *McNary* Court extracted from its precedents is thus framed expansively: "[W]e hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of *state tax systems* in federal courts." 454 U.S. at 116 (emphasis added). The Eleventh Circuit has since echoed this language. *Ayers v. Polk County*, 697 F.2d 1375, 1376 (11th Cir. 1983)(challenge to a tax sale)("The overriding concern of *McNary* is respect for state revenue collection systems ....").

The receipt of excess funds at tax sales and the charging of interest thereon to obtain redemption serve to encourage taxpayers to make timely payments and potential buyers to bid at tax sales. They, and the tax sale procedure of which they are a part, thus constitute "modes adopted to enforce the taxes levied," within a single "revenue collection system" protected by comity from federal interference. Any attempt, including this one, to declare a tax sale illegal or to recover damages on the ground of illegality is barred by the comity doctrine. *Wright v. Pappas*, 256 F.3d at 637.

Thus, the plaintiff "must seek protection of [his] federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete ...." *Fair Assessment v. McNary*, 454 U.S. at 116. Because there is "no significant difference" between a "'plain, speedy and efficient" remedy for purposes of the TIA and a "plain, adequate, and complete" remedy for purposes of comity analysis, *id*. at 116 n.8, the discussion in Part I.B confirms that such a state

remedy exists.[11]

The plaintiff's recapitulation of his arguments under the TIA, (Doc. 25 at 14-16), are no more effective under the doctrine of comity. His only additional assertion is the representation that Judge Proctor has "reviewed identical arguments made by the Defendants and found them to be without merit." (Doc. 25 at 15 n.2). In fact, the Court merely "conclude[d] that it would be imprudent for it to address the issues raised in the motion [to dismiss] until the parties have had an opportunity to conduct discovery." *Winston v. Jefferson County*, Case No. 02:05-CV-497-RDP, Doc. 42.

The proper remedy when, as here, a federal Section 1983 suit is barred by comity is dismissal of the action.[12] The plaintiff does not argue otherwise.

## CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are **granted**. This action is **dismissed without prejudice**.

DONE and ORDERED this 25th day of July, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[11] As with the TIA, the burden is on the plaintiff to establish the absence of an adequate remedy for purposes of comity. *Gibson v. Gains*, 2006 WL 858336 at *3 (11th Cir. 2006); *Winicki v. Mallard*, 783 F.2d 1567, 1570 (11th Cir. 1986).

[12] *E.g., Gibson v. Gains*, 2006 WL 858336 at *3; *Winicki v. Mallard*, 783 F.2d at 1570; *Ayers v. Polk County*, 697 F.2d at 1376.